STATE OF VERMONT

SUPERIOR COURT                    ENVIRONMENTAL DIVISION

|   |   |
|---|---|
| In re Ridgewood Estates Homeowners' Association | } |
| & Indian Creek Homeowners' Association | } Docket No. 57-4-10 Vtec |
| (Appeal of Connelly) | } |
|   | } |

Decision and Order on Pending Motions

Appellant Daniel S. Connelly appealed from a March 16, 2010 decision by the Department of Environmental Conservation of the Vermont Agency of Natural Resources (ANR) authorizing the Ridgewood Estates Homeowners' Association and the Indian Creek Homeowners' Association[1] jointly to discharge stormwater under National Pollutant Discharge Elimination System (NPDES) General Permit 3-9030. Appellant has appeared and represents himself; the ANR is represented by Catherine J. Gjessing, Esq. The Ridgewood Estates Homeowners' Association is represented by its president, Bruce Erwin, and has not taken an active role on the present motions. The City of South Burlington is represented by David W. Rugh, Esq. and has not taken an active role on the present motions. The Indian Creek Homeowners' Association has not entered an appearance in this appeal.

The Court issued a decision on July 21, 2010 ruling on ANR's motion to dismiss for lack of standing. The Court granted the motion to dismiss in relation to the financial interests claimed by Appellant as a condominium owner in the Indian Creek development, concluding that he had failed to articulate an injury to a particularized interest protected by the applicable statutes. However, to the extent

---

[1] The titles of the association-applicants are taken from the authorization decision on appeal.

that Appellant was instead asserting an injury to his stated particularized interest in observing birds and wildlife at an existing pond at the Indian Creek Condominiums, which pond is proposed to be used as part of the stormwater management system at issue in the decision on appeal, the Court determined that Appellant had standing.

In response to the partial dismissal ruling, Appellant withdrew Questions 7, 8, and 9 of his original Statement of Questions, moved to amend the remaining Questions 1 through 6, and subsequently moved to further amend Questions 2 and 3. The ANR has moved to dismiss amended Questions 3, 4, and 5, and has moved either to dismiss amended Questions 1, 2, and 6, or, in the alternative, to narrow the scope of those questions to whether the use of the pond in the proposed stormwater management system complies with the terms and conditions of General Permit 3-9030. The motions to amend the Statement of Questions and the renewed motion by ANR to dismiss or limit those questions are the subject of the present decision.

Procedural and Factual Background

Ridgewood Estates and Indian Creek Condominiums are housing developments located at the northwest corner of the intersection of Dorset Street and Swift Street in South Burlington. The Ridgewood Estates development was apparently built in phases in the 1970s and 1980s, with the current Indian Creek Condominiums being the third phase of that development.[2] Stormwater runoff from these projects reaches Potash Brook, a stream that flows into Lake Champlain.

The Clean Water Act was enacted in 1972 in an effort "to restore and maintain the chemical, physical, and biological integrity" of the nation's waters. 33 U.S.C.

---

[2] Any factual disputes relating to the circumstances of the original existence or construction of the pond at issue in this appeal are reserved for resolution by summary judgment or on the merits of any questions not dismissed in this decision and order. V.R.C.P. 12(b), (c).

§ 1251. To accomplish this goal, the Act prohibits the discharge of any pollutant into the waters of the United States, 33 U.S.C. § 1311, unless the discharger first obtains a National Pollutant Discharge Elimination System (NPDES) permit regulating that discharge. See 33 U.S.C. § 1342. The U.S. Environmental Protection Agency (EPA) can delegate authority to an appropriate state agency to administer the federal NPDES permit program for the waters within its jurisdiction. See 33 U.S.C. §§ 1342(a)(5), (b). The Vermont ANR has been so authorized.

In 1977, the then Vermont Agency of Environmental Conservation, predecessor to the ANR, issued discharge permit 1-239 to Ridgewood Estates, regulating its stormwater discharges to Potash Brook. In 1981, the Agency issued a letter regarding Phase III of the Ridgewood Estates project, comprising Indian Creek, stating that the proposal for managing the Phase III (Indian Creek) stormwater runoff conformed with the discharge permit issued to Ridgewood Estates in 1977. Callahan Aff. ¶ 7, Attachment 1H.

In 1987, Congress amended the Clean Water Act to add 33 U.S.C. § 1342(p), which specifically addressed the issue of stormwater discharges through a two-phase regulatory approach. It placed a moratorium on stormwater regulation until late 1994, except for stormwater discharges already being regulated (and a few other exceptions not relevant to the present case). 33 U.S.C. §§ 1342(p)(1), (2). Beginning in October of 1994, the statute vested authorized state agencies with so-called 'residual designation authority' to designate any other stormwater discharge as also requiring a NPDES permit. 33 U.S.C. § 1342(p)(1); see also Stormwater NPDES Petition, No. 14-1-07 Vtec, slip op. at 15 (Vt. Envtl. Ct. Aug. 28, 2008) (Durkin, J.).

The federal rules issued for the second phase under 33 U.S.C. § 1342(p) define which types of stormwater discharges require the authorized state agency to exercise its residual designation authority and issue NPDES permits for stormwater discharges that contribute to a violation of a water quality standard. 40 C.F.R.

3

§ 122.26(a)(9)(i)(D). EPA regulations allow such stormwater discharges to be regulated either by an individual NPDES permit or under the terms of a general NPDES permit.

The concept of the "general permit" was developed to ease the administrative burdens created by the Clean Water Act's mandate that the EPA regulate every discharge into the waters of the United States. A general permit is a permit containing a set of standard permit conditions that can be applied to a potentially large group of similar discharges. In National Resources Defense Council, Inc. v. Costle, 568 F.2d 1369, 1381 (1977), the federal Circuit Court of Appeals for the District of Columbia held that the Clean Water Act allowed the use of area or general permits in situations in which it would be administratively more efficient to regulate numerous point sources under a single set of general conditions.

Stormwater discharges have been addressed in federal regulations through the use of general permits. See, e.g., 40 C.F.R. §§ 122.26(c), 122.33(b). These general permits rely primarily on the use of Best Management Practices (sometimes referred to as BMPs), rather than specific effluent limitations, to reduce the discharge of contaminated stormwater into nearby waterbodies.

In 2003, the Conservation Law Foundation (CLF) had petitioned the ANR to determine that existing stormwater discharges into the Potash Brook and four other nearby brooks contributed to violations of the Vermont Water Quality Standards and thus required NPDES permits under the federal Clean Water Act. On appeal, the Vermont Supreme Court remanded the petition to the ANR to reconsider the petition after undertaking the required analysis under ANR's residual designation authority. In re Stormwater NPDES Petition, 2006 VT 91, 180 Vt. 261.

On remand, the ANR again denied the petition, and CLF appealed the decision to this Court, which granted CLF's petition and ordered ANR to exercise its residual designation authority to require applications for all stormwater discharges

4

that contribute pollutants to the five listed brooks. In re: Stormwater NPDES Petition, No. 14-1-07 Vtec (Vt. Envtl. Ct. Aug. 28, 2008) (Durkin, J.). Following that decision, ANR drafted General Permit 3-9030 regulating stormwater discharges into Potash Brook and the other four brooks.

Point sources eligible for coverage under a general permit may obtain such coverage by filing, with the federal or state agency responsible for administering the general permit, a Notice of Intent to have their discharges covered under the general permit. Following administrative approval of a discharge proposed in a Notice of Intent, the applicant who filed the Notice of Intent is thereby authorized to discharge, as long as the discharge complies with the requirements of the general permit.

Any general permit program administered by a state under the federal Clean Water Act must satisfy the requirements of 40 C.F.R. § 122.28. A general permit is issued following public notice and an opportunity for public comment on the proposed permit. 40 C.F.R. §§ 122.28, 124.10, 124.11, 124.12.

Appellant submitted two comments to the ANR regarding proposed stormwater General Permit 3-9030 during the notice and comment period for the permit, which ran from September 30, 2009 through October 30, 2009. On November 19, 2009, the ANR issued stormwater General Permit 3-9030, under the authority delegated to it as part of the federal NPDES program. Appellant did not appeal the ANR's issuance of General Permit 3-9030.

General Permit 3-9030 requires any stormwater discharge that has been residually designated by ANR as contributing to the violation of water quality standards in Potash Brook (or in any of the other four impaired brooks) to obtain coverage under the General Permit. General Permit 3-9030 required properties such as Ridgewood Estates and Indian Creek Condominiums that were already subject to a previously issued state stormwater permit to submit a Notice of Intent to

5

discharge under the General Permit by December 16, 2009. General Permit 3-9030 § III(A)(1). Upon receipt of written authorization from the ANR, a property that filed a timely Notice of Intent is authorized to continue to discharge stormwater, subject to the terms and conditions of General Permit 3-9030. General Permit 3-9030 § III(F). Even after receipt of that authorization, such properties are still required to conduct and submit an Engineering Feasibility Analysis, as well as to submit plans for implementing the Best Management Practices identified in that analysis, by June 30, 2011. General Permit 3-9030 § III(A)(1). The Engineering Feasibility Analysis and Best Management Practices plan are intended to demonstrate how the property will meet the requirements in the Vermont Stormwater Management Manual for Recharge Volume, Channel Protection Volume, and Water Quality Volume. General Permit 3-9030, Appendix A.

Also on November 19, 2009, the ANR issued a final list of discharges for residual designation as point source discharges requiring NPDES permit coverage. The list included both "Ridgewood Condos" and "Indian Creek" as designated discharges from property with existing impervious surfaces and subject to a previously issued state stormwater permit, listing them both as holding Permit # 1-0239. Appellant did not appeal the ANR's November 19, 2009 residual designation action regarding Ridgewood Estates and Indian Creek Condominiums.

On December 15, 2009, the Ridgewood Estates and Indian Creek Condominiums Homeowners' Associations (the Homeowners' Associations) submitted a joint application for coverage under the General Permit by submitting Notice of Intent # 6285-9030 to discharge under NPDES General Permit 3-9030 for approval by the ANR. In their joint Notice of Intent, the Homeowners' Associations proposed a stormwater management system that includes the discharge of stormwater from both the property of Ridgewood Estates and the property of Indian Creek Condominiums. The aggregated stormwater management system, which

6

includes flows from Ridgewood Estates into an existing pond on the property of Indian Creek Condominiums, ultimately flows into the Potash Brook.[3]

During the 10-day comment period, Appellant submitted the sole public comment regarding the Homeowners' Associations' application. On March 16, 2010, the ANR approved the Homeowners' Associations' joint Notice of Intent # 6285-9030, authorizing the discharge of stormwater from Ridgewood Estates and Indian Creek Condominiums to Potash Brook under the authority of General Permit 3-9030. In the present appeal, Appellant appealed to this Court the ANR's March 16, 2010 decision approving the joint Notice of Intent # 6285-9030 and authorizing the stormwater discharge subject to General Permit 3-9030.

Appellant's Motions to Amend the Statement of Questions

Like motions to amend a complaint under V.R.C.P. 15, motions to amend a statement of questions are to be liberally granted, so long as they do not prejudice the other party, so that the case can move forward on the merits of the actual issues dividing the parties. See, e.g., Appeal of Town of Fairfax, Docket No. 45-3-03 Vtec, slip op. at 5 (Vt. Envtl. Ct. June 13, 2005) (Wright, J.); Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1. In the present case, Appellant's proposed amendment of his Statement of Questions, intended to address this Court's July 21 ruling, will not prejudice the ANR, and may help to clarify or narrow the issues he seeks to raise in this appeal. Appellant's motions of August 23, 2010 and October 18, 2010 to amend the remaining questions (1 through 6) in the Statement of Questions are hereby GRANTED. The Court will address the ANR's motions to dismiss with respect to Appellant's Questions 1 through 6 as amended. All amended questions are quoted

---

[3] Appellant also claims that the property on which the pond is located was not properly transferred to Indian Creek Condominiums, see infra note 5.

verbatim in this decision as they appear in Appellant's proposed amended questions; all emphasis, brackets, and insertions of the indicator "sic" appear in the original.[4]

ANR Motion to Dismiss or Limit Scope of Statement of Questions

The present appeal is from an ANR decision authorizing the Homeowners' Associations to discharge stormwater pursuant to General Permit 3-9030. Under 10 V.S.A. § 8504(j), which governs "[a]ppeals of authorizations or coverage under a general permit," any appeal of "an authorization or coverage under a general permit" is "limited in scope to whether the permitted activity complies with the terms and conditions of the general permit." That is, any challenge to the provisions of General Permit 3-9030 itself must have been timely filed counting from the date on which that general permit was issued by the ANR. Similarly, any challenge to the residual designation or listing of the Ridgewood Estates and Indian Creek Condominiums must have been timely filed counting from the date on which that final residual designation was issued by the ANR. Both General Permit 3-9030 and the final designation of Ridgewood Estates and Indian Creek Condominiums were issued on November 19, 2009; any appeal of those decisions had to be filed no later than December 20, 2009. No such appeals were filed; both of those decisions became final and are beyond the scope of this appeal

Amended Questions 3, 4, and 5

In Amended Question 3, Appellant asks:

In authorizing the application for the discharge of wastes under NOI #6285-9030, a single notice covering separate point source

---

[4] For the sake of clarity, the text of this decision also avoids the use of certain abbreviations used in Appellant's questions, such as "XP" for "Existing Pond."

activities of separately designated discharges, did ANR fail to define specific management and treatment obligations of Ridgewood Estates Homeowners Association for in particular, the management and treatment of wastes of Ridgewood Estates that are discharged through a storm sewer closed pipe point source outfall into "Existing Pond" (XP) on the property of Indian Creek to be treated there, in violation of the Decision and Judgment Order of Durkin, J., that "ANR must exercise its residual designation authority to require applications for NPDES permits for these <u>specific</u> [point source] discharges" and that ANR must "require the responsible parties to apply for <u>specific</u> NPDES permits for the currently unregulated stormwater discharges . . . ." [<u>In re: Stormwater NPDES Petition</u>, Docket No. 14-1-07, August 2008, emphasis added] and in violation of the federal Supreme Court's holding regarding the purpose of an NPDES permit, that "the <u>permit</u> <u>defines</u>, and facilitates compliance with, and enforcement of, a preponderance of a <u>discharger's</u> <u>obligations</u> under the [CWA, 1972] Amendments." [<u>EPA v. California</u> *ex. rel.* <u>State Water Res. Control Bd.</u>, 426 US 200, 205 (1976), emphasis added]?

In Amended Question 4, Appellant asks:

In authorizing a joint application for a NPDES RDA permit under NOI #6285-9030, did ANR administratively aggregate, without sufficient authority in Vermont Statute, in Vermont Water Pollution Control Regulations or in General Permit 3-9030?, two separately designated discharges into a single designated discharge such that "Existing Pond" (XP) on property of Indian Creek might be converted to a wet retention pond as BMP treatment for a storm sewer closed pipe point source discharge of Ridgewood Estates, but portrayed in the application, by failing to identify any actual discretely listed designations, as a point source and a BMP of a single designation?

In Amended Question 5, Appellant asks:

In authorizing the discharge of wastes on NOI #6285-9030, did ANR violate the filing requirements of Vermont Water Pollution Control Regulations, Rule 13.12 by allowing co-applicant Indian Creek Homeowners (sic) Association to apply as a "person willing to discharge wastes [subpart C.2] from, among other point sources, a

particular storm sewer closed pipe point source discharging from 1.79 acres of impervious surfaces at Ridgewood Estates into "Existing Pond" (XP) on property of Indian Creek, with Indian Creek having no ownership of nor control over this discharge[5] and having no credible interest in nor any reasonable legitimacy for "wishing to discharge wastes" at this point source?.

Amended Questions 3, 4, and 5 all seek to raise issues related to the joint or aggregate nature of the authorization allowing the two Homeowners' Associations to discharge under General Permit 3-9030.

Amended Question 3 does not raise any issue as to whether the permitted activity complies with the terms and conditions of General Permit 3-9030; it is therefore entirely beyond the scope of this appeal under 10 V.S.A. § 8504(j), and must be DISMISSED. In addition, to the extent that it argues that the discharges listed in the ANR's November 19, 2009 residual designation action as being covered by a single existing permit should instead be ruled to be separate, that residual designation action was not appealed and has become final.

Amended Question 5 does not raise any issue as to whether the permitted activity complies with the terms and conditions of General Permit 3-9030; it is also therefore entirely beyond the scope of this appeal under 10 V.S.A. § 8504(j), and must be DISMISSED. In addition, to the extent that it seeks to challenge the legal

---

[5] Appellant claims that the land upon which the pond is located was never properly transferred to Indian Creek Condominiums from the Vermont Federal Savings and Loan, and that therefore Indian Creek Condominiums does not have an ownership interest in the pond. Appellant's Resp. to Mot. to Dismiss at 15. Resolution of this issue is not within the scope of whether the permitted discharge complies with the terms and conditions of General Permit 3-9030, and is therefore beyond the scope of this appeal. In any event, actions regarding the title to property are not within this Court's subject-matter jurisdiction, but rather must be addressed to the Civil Division of the Vermont Superior Court.

relationship or any private agreements between the two Homeowners' Associations, it is beyond the scope of this appeal.

To the extent that Amended Question 4 asks whether General Permit 3-9030 allows the ANR to "administratively aggregate" the discharges from Ridgewood Estates and Indian Creek Condominiums, it is within the scope of this appeal under 10 V.S.A. § 8504(j); to the extent it inquires about authority in Vermont statutes or regulations, it is beyond the scope of this appeal under 10 V.S.A. § 8504(j). Amended Question 4 must therefore be limited to whether any condition or term of General Permit 3-9030 prohibits the ANR from issuing a joint authorization for the discharges from Ridgewood Estates and Indian Creek Condominiums. As so limited, Amended Question 4 may be suitable for summary judgment, which will be discussed at the scheduled telephone conference (see final paragraph of this decision).

Amended Questions 1 and 2

In Amended Question 1, Appellant asks:

Did ANR fail to enforce CWA sections 301 when it approved NPDES permit coverage under NOI #6285-9030 for the designated discharge of Ridgewood Estates, which discharge includes a storm sewer closed pipe point source outfall directly into waters of the United States at an impoundment known as "Existing Pond" (XP) on the property of Indian Creek, and did so without setting conditions to limit the effluent entering the waters of the United States from this particular point source?

In Amended Question 2, Appellant asks:

Did ANR fail to enforce any or all of CWA section 401, CWA section 402, VWQS Section 1-03 and VWQS Section 1-04 when it approved a NPDES RDA permit under NOI #6285-9030 for the designated discharge of Ridgewood Estates, which discharge includes

11

a storm sewer closed pipe point source outfall directly into navigable waters of the United States at an impoundment known as "Existing Pond" (XP) on the property of Indian Creek, and approved an NPDES RDA permit under the same NOI #6285-9030 for the designated discharge of Indian Creek, which permit application includes construction of a BMP treatment by conversion of "Existing Pond" to a storm water retention basin, both approvals given without consideration of the existing uses of this pond on a case-by-case basis ((VWQS Section 1-03.B.1) and without consideration of an "Individual Application" [40 CFR 122.26(c)(1)] for each of the two Section 402(p)(2)(E) discharges that are the subjects of this NOI application?

Amended Questions 1 and 2 address whether individual permits with individual effluent limits or individual analyses of the use of the pond should have been required for the discharges at issue in this appeal.

Amended Question 1 does not raise any issue as to whether the permitted activity complies with the terms and conditions of General Permit 3-9030; it is therefore entirely beyond the scope of this appeal under 10 V.S.A. § 8504(j), and must be DISMISSED.  To the extent that it argues that General Permit 3-9030 should have included effluent limitations rather than stormwater Best Management Practices, General Permit 3-9030 was not appealed and has become final.

Amended Question 2 does not raise any issue as to whether the permitted activity complies with the terms and conditions of General Permit 3-9030; it is also entirely beyond the scope of this appeal under 10 V.S.A. § 8504(j), and must be DISMISSED.  To the extent that it argues that the designated discharges should instead be required to apply for an individual NPDES stormwater permit, that issue is also beyond the scope of this appeal under 10 V.S.A. § 8504(j).  Standard Condition VI(E) of General Permit 3-9030 refers to the petition process for such action; any appeal from a decision on such a petition would be an entirely separate appeal.

<u>Amended Question 6</u>

In Amended Question 6, Appellant asks:

> Did ANR fail to enforce "Permit Submittal Requirements and Collection, Treatment and Control Standards" of subpart IV.A of General Permit 3-9030 when it approved, on March 16, 2010, BMPs for designated discharges of NOI #6285-9030 using grandfathered EFA and construction plans, presumably subsequently filed as attachments to this NOI, this NOI having been submitted jointly on December 15, 2009 by Ridgewood Estates Homeowners Association and Indian Creek Homeowners (sic) Association, and for which grandfathered EFA and construction plans of July 2009 are misleading and not adequately site-specific with regard to ownership, use and control of, among other elements, a BMP labeled "Ridgewood Existing Basin #1", this being more correctly an existing pond and wetland with an existing use, located on lands of Indian Creek, and more appropriately known as "Existing Pond" at Indian Creek, and being a pond and wetlands qualified for protection from degradation as navigable waters of the United States?

Amended Question 6 does raise issues as to whether the permitted activity complies with the terms and conditions of General Permit 3-9030; to that extent it is therefore within the scope of this appeal under 10 V.S.A. § 8504(j).   Amended Question 6 asks whether the Engineering Feasibility Analysis and construction plan drawn up in July of 2009 and submitted with the December 2009 application for the Notice of Intent in this case violated the terms and conditions of General Permit 3-9030.  Amended Question 6 may be suitable for summary judgment, which will be discussed at the scheduled telephone conference (see final paragraph of this decision).

In addition, § IV(A) of General Permit 3-9030 appears to require the Homeowners' Associations to conduct and submit an Engineering Feasibility Analysis and a BMP implementation plan by June 30, 2011, or, if an Engineering Feasibility Analysis has already been approved, to resubmit that analysis.    The

13

parties should be prepared to discuss whether the June 30, 2011 submission deadline will render any aspect of Amended Question 6 moot.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's Motions to Amend Questions 1 through 6 are GRANTED. ANR's Motion to Dismiss Amended Questions 1, 2, 3, and 5 are GRANTED, as discussed above. ANR's Motion to Dismiss Questions 4 and 6 are DENIED but the scope of both questions is hereby LIMITED to whether the discharges authorized in the action on appeal comply with the terms and conditions of General Permit 3-9030, as discussed above. Amended Question 4 is limited to whether any term or condition of General Permit 3-9030 precluded the joint or aggregated application as described in Question 4. Amended Question 6 is limited to whether the submittal requirements of General Permit 3-9030 were met by the versions of the Engineering Feasibility Analysis and/or the BMP implementation plan submitted in the application.

Please be prepared to discuss, at the telephone conference scheduled in this matter (see enclosed notice), whether either party will be moving for summary judgment on Questions 4 or 6, and whether any portion of Question 6 will become moot as of the Homeowners' Associations' submittal of the revised Engineering Feasibility Analysis and BMP implementation plan required to be submitted to the ANR by June 30, 2011.

Done at Berlin, Vermont, this 26th day of January, 2011.

_____
Merideth Wright
Environmental Judge

14